## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BOSTON HANNAH INTERNATIONAL, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| AMERICAN ACADEMY OF FAMILY PHYSICIANS, | ) ) ) |
| Defendant. | ) ) |

Case No. 10-2510-CM

## MEMORANDUM AND ORDER

Boston Hannah International, L.L.C. alleges that American Academy of Family Physicians ("AAFP") breached a 2005 production and licensing agreement ("2005 Agreement") or amendments made to this agreement, breached the implied duty of good faith and fair dealing, and tortiously interfered with Boston Hannah's contracts and business expectancy.  AAFP argues that it fully performed its obligations under the contract and that the parties never amended the agreement.  AAFP also asserts a breach of contract counterclaim against Boston Hannah.  Currently before the court is AAFP's motion for summary judgment on all claims (Doc. 138).  Also before the court is AAFP's motion to strike Boston Hannah's second and third expert reports (Doc. 119), AAFP's supplemental motion to strike (Doc. 132), and AAFP's motion to exclude the report and testimony of Douglas Miller (Doc. 136).

The allegations in this lawsuit are complex.  The 2005 Agreement grants Boston Hannah the right to produce an annual consumer-oriented health magazine and the exclusive right to sell advertising in this magazine.  AAFP has the right to approve (such approval not to be unreasonably

withheld) all advertising content prior to its acceptance in the magazine.  Boston Hannah alleges that AAFP unreasonably withheld its approval for advertising content that Boston Hannah wanted to include in several magazines in 2010 and to place on AAFP's website (www.familydoctor.org).

In the court's view, the central issue is whether the parties amended the 2005 Agreement to grant Boston Hannah additional rights (including the right to produce multiple magazines in 2010 and the right to sell advertising on AAFP's website).  If Boston Hannah had either of these additional rights, then Boston Hannah may be able to prove that AAFP unreasonably withheld its approval for advertising content that Boston Hannah wanted to include in the magazines or on the website.  If it did not, then Boston Hannah has no evidence of a breach.  After carefully reviewing the briefs, evidence, and case law, the court concludes that the parties did not amend the 2005 Agreement.  Accordingly, AAFP is entitled to summary judgment on Boston Hannah's breach of contract claim.  AAFP is also entitled to summary judgment on Boston Hannah's remaining claims because there is no evidence that AAFP breached the implied duty of good faith and fair dealing and because Boston Hannah failed to come forward with any evidence of damages to support its tortious interference claims.  Conversely, AAFP is entitled to summary judgment on its breach of contract counterclaim.  Accordingly, the court grants AAFP's motion for summary judgment and denies AAFP's remaining motions as moot.

## I.    Background

The court reviewed the factual record and draws all reasonable inferences therefrom in the light most favorable to Boston Hannah.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Plaintiff Boston Hannah is an international publishing company with offices in the United States and London.  Defendant AAFP is headquartered in Leawood, Kansas, and is a medical organization that represents more than 100,000 family physicians, family medicine residents, and medical students nationwide.

In 2005, Boston Hannah and AAFP entered into the 2005 Agreement.  Under this agreement, Boston Hannah was required to produce, publish, and distribute an annual consumer-oriented health magazine to AAFP and AAFP's members from 2006 through 2010.  In exchange, Boston Hannah was granted the exclusive right to sell advertising in the annual magazine and was allowed to retain all sums accruing to the publication from advertising sales.  AAFP, however, had the right to approve (such approval not to be unreasonably withheld) all advertising content prior to its acceptance for inclusion in the magazine.  Boston Hannah also agreed to pay AAFP a royalty and to reimburse AAFP for AAFP's costs incurred in connection with AAFP's editorial review of each magazine.  Finally, the 2005 Agreement stated that the agreement could not be modified or amended except in writing signed by both parties.

Boston Hannah produced an annual consumer-oriented health magazine in 2006, 2007, and 2008.  In February 2009, Boston Hannah sent AAFP an email that suggested altering the publication from an annual magazine to a series of mini-magazines, that suggested embedding each mini-magazine on AAFP's website www.familydoctor.org, and that summarized Boston Hannah's discussions with AnswerMedia (a third party that sold advertising space on www.familydoctor.org). AAFP responded that it "like[d] your new direction," would "look at the [2005 Agreement] and see if we need to prepare an addendum," and "look[ed] forward to working through the details . . . ."  (Doc. 140-20 at 1–2.)

After this email exchange, Boston Hannah purchased advertising space on www.familydoctor.org from AnswerMedia.  In October 2009, Boston Hannah published two magazines and, in February/March 2010, Boston Hannah published *Understanding Over the Counter Medicines*.  A digital version of each of these magazines was linked to www.familydoctor.org.

In February 2010, AAFP notified Boston Hannah that The Coca-Cola Company ("TCCC") and AAFP entered an agreement ("TCCC Agreement").  The TCCC Agreement included an exclusivity clause that prevented AAFP from "allow[ing] itself or its Marks to be associated in any way with any other Beverage or Beverage company."  (Doc. 139-4 at 4.)  AAFP's notice to Boston Hannah included a memorandum that quotes the above language from the TCCC Agreement.  The TCCC Agreement became effective on October 1, 2009.

AAFP also entered an agreement with Pharmavite, L.L.C. ("the Pharmavite Agreement").  The Pharmavite Agreement became effective on February 1, 2010, and stated that "Pharmavite will be the only Dietary Supplement company and the Participating Brands will be the only Dietary Supplements represented on the FamilyDoctor.org homepage, on the reorganized Health Living . . . section of FamilyDoctor.org, and on any other pages of FamilyDoctor.org where Pharmavite has purchased additional advertising or is designated as a sponsor of specific content."  (Doc. 139-5 at 3.)  AAFP notified Boston Hannah of the Pharmavite restrictions in March 2010.

After receiving notification of the TCCC Agreement and Pharmavite Agreement, Boston Hannah sent AAFP a letter summarizing Boston Hannah's understanding of these agreements on April 8, 2010.  In this letter, Boston Hannah explained that AAFP's agreements with Pharmavite and TCCC would cause major financial losses to Boston Hannah because of the advertising restrictions, that Boston Hannah would produce two more publications in 2010, and that, as soon as it completed those two publications, it would cease all work.  (Doc. 140-29 at 3.)  AAFP responded on April 15, 2010, and gave formal notice that it would not renew the 2005 Agreement.  This lawsuit followed.

## II.     AAFP Is Entitled To Summary Judgment On Boston Hannah's Claims

### A.     <u>AAFP Is Entitled To Summary Judgment On Boston Hannah's Breach of Contract Claim</u>

Boston Hannah's first claim alleges that AAFP breached the 2005 Agreement or amendments made to that agreement.  Specifically, Boston Hannah alleges that either the plain language of the 2005 Agreement or amendments made to the 2005 Agreement granted Boston Hannah the right to publish multiple magazines in 2010, to sell advertising on www.familydoctor.org, and to place an electronic copy of each magazine on www.familydoctor.org.  Because Boston Hannah had these continuing rights to sell advertising, it alleges that AAFP's agreements with TCCC and Pharmavite unreasonably restricted Boston Hannah's right to sell advertising, which violates § 2.2 of the 2005 Agreement.[1]  AAFP responds that plain language of the 2005 Agreement does not grant Boston Hannah these rights and the parties never executed any amendments.  Rather, the 2005 Agreement only grants Boston Hannah the right to produce an annual magazine, which it did every year from 2006 through 2010.  Therefore, AAFP fully performed its obligations, which means that Boston Hannah has no evidence of a breach.  *See Commercial Credit Corp. v. Harris*, 510 P.2d 1322, 1325 (Kan. 1973) (listing elements of a breach of contract claim).  After carefully reviewing the briefs, the evidence, and the applicable law, the court determines that AAFP is entitled to summary judgment on this claim.

### 1.     The Plain Language Of The 2005 Agreement

The parties agree that Kansas law governs the 2005 Agreement.  Under Kansas law, the construction of a written contract is a question of law.  *Wagnon v. Slawson Exploration Co.*, 874 P.2d

---

[1]     Section 2.2 of the 2005 Agreements states:

> Boston Hannah will have the exclusive right to sell advertising space in the Book and, in consideration for publishing and distributing the Book, it shall retain all sums accruing to the publication from advertising sales. . . .  AAFP shall have the right to approve (such approval not to be unreasonably withheld) all advertising content prior to its acceptance for inclusion in the Book.

659, 666 (Kan. 1994).  The primary rule in interpreting contracts is to ascertain the intentions of the parties and to give effect to that intent.  *Ryco Packaging Corp. v. Chapelle Int'l, Ltd.*, 926 P.2d 669, 674 (Kan. 1996) (citing *Hollenbeck v. Household Bank*, 829 P.2d 903, 906 (Kan. 1992)).  If the contract is plain and unambiguous, the parties' intent should be determined from within the contract's four corners and without review of extrinsic or parole evidence.  *Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884, 887 (Kan. 1992).

After reviewing the 2005 Agreement, the court determines as a matter of law that the contract is unambiguous.  *See Richardson v. NW Cent. Pipeline Corp.*, 740 P.2d 1083, 1087 (Kan. 1987) ("[L]anguage in a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in the sense that the contract may be understood to reach two or more possible meanings.").  The 2005 Agreement grants Boston Hannah the right to produce "an annual consumer-oriented health magazine, focusing on health and lifestyle issues of importance to consumers and family physicians."  (Doc. 140-19 at §§ 1.1 and 2.2.)  This means that Boston Hannah has the right to produce one magazine a year.  And no other provision in the 2005 Agreement is inconsistent with this interpretation.

The 2005 Agreement also does not grant Boston Hannah the right to sell advertising on www.familydoctor.org, or to place an electronic copy of each magazine on www.familydoctor.org.  The 2005 Agreement requires the parties to "discuss possible online applications for the content and as enhanced advertiser packages (at a premium price)."  (Doc. 140-19 at § 4.4.)  But this language only requires the parties to discuss these issues and does not give Boston Hannah the right to sell or place anything on www.familydoctor.org.

### 2.    The Parties Did Not Amend The 2005 Agreement

Boston Hannah argues that if the plain language of the 2005 Agreement did not grant it the right to produce multiple magazines each year, to place electronic copies of the magazine on

www.familydoctor.org, or to sell advertising on www.familydoctor.org, then the parties amended the 2005 Agreement through oral agreements, course of conduct, email correspondence, the development process, and the media packs to grant Boston Hannah these rights.  The court disagrees.

Section 9.1 expressly states that the 2005 Agreement "may not be modified or amended except in writing signed by both parties hereto."  (Doc. 140-19 at § 9.1.)  Except for construction contracts, Kansas courts enforce contract provisions that require amendments to be in writing.  *See Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1159 (10th Cir. 2007) (applying Kansas contract law and explaining that "the MSA explicitly prohibits modification of the contract's terms except in writing, MSA § 17.15, so the parties themselves specifically agreed that there could be no modification of their obligations through the course of performance") (citing *Riley State Bank of Riley v. Spillman*, 750 P.2d 1024, 1028 (Kan. 1998)); *Fitzmorris v. Shaffer*, No. 99,010, 2008 Kan. App. Unpub. LEXIS 770, at *11 (Kan. Ct. App. 2008) (affirming summary judgment and determining that "we find no authority outside the context of a construction contract that renders ineffective the clear expression of the parties that amendments to their written contract must also be in writing and signed by the parties").  The 2005 Agreement is not a construction contract, so the court must enforce § 9.1.  Accordingly, oral agreements and the parties' course of conduct do not constitute amendments to the 2005 Agreement.

The court also determines that the email correspondence, the development process, and the media packs do not constitute contract amendments.  The development process and media packs do not require serious consideration as Boston Hannah has failed to support both of these proffered "amendments" with any form of a writing that is signed by AAFP and Boston Hannah.[2]  The email

---

[2]    The 2005 Agreement requires AAFP to participate in the development process and to approve media packs.  (*See, e.g.* Doc. 140-19 at §§ 3.4, 4.1, and 4.2.)  Boston Hannah never addresses how an action that is expressly required in the 2005 Agreement can also constitute an amendment to the 2005 Agreement.

correspondence requires slightly more analysis because § 9.1 does not expressly include or exclude electronic communications.  But, upon review of the entire 2005 Agreement, the parties clearly intended for a writing to be a handwritten or typed agreement on paper—not an email exchange.  *See Arnold v. S.J.L. of Kan. Corp.*, 822 P.2d 64, 67 (Kan. 1991) ("The meaning of a contract should always be ascertained by a consideration of all pertinent provisions and never be determined by critical analysis of a single or isolated provision.").  For example, § 12.2 requires that all "notices, consents, approvals and other communications hereunder ('Notice') shall be in writing only and shall be sent by registered or certified United States mail . . . ."  This mailing requirement clearly indicates that the parties intended for writings to be on paper because otherwise the parties would have included appropriate delivery options for electronic communications.  Therefore, the email correspondence does not constitute an amendment to the 2005 Agreement.

Boston Hannah argues that AAFP is estopped from arguing that the contract was not amended because in the email correspondence AAFP stated that it would look at the contract to see whether the parties needed to prepare an addendum.  The court disagrees.  To prove equitable estoppel, Boston Hannah must be "without knowledge or means of knowing the real facts . . . ."  *Schmitt v. Beverly Health and Rehab. Servs., Inc.*, 993 F. Supp. 1354, 1362 (D. Kan. 1998) (citing *Place v. Place*, 486 P.2d 1354, 1358–59 (Kan. 1971)).  In this case, AAFP's agreements with TCCC and Pharmavite are not relevant to whether the 2005 Agreement needed to be amended.  Boston Hannah knew the terms of the 2005 Agreement and was able to determine whether an amendment was necessary and what constituted an amendment.  It failed to do so.  That is a dereliction of Boston Hannah's duty and may not serve as the basis for a claim of equitable estoppel.  *Gillespie v. Seymour*, 823 P.2d 782, 789 (Kan. 1991).

### 3.   AAFP Did Not Breach The 2005 Agreement

As explained above, Boston Hannah argues that AAFP breached the 2005 Agreement because the Pharmavite Agreement and TCCC Agreement unreasonably restricted Boston Hannah's ability to sell advertising in the remaining magazines and on www.familydoctor.org.  But the 2005 Agreement only allowed Boston Hannah to produce an annual consumer-oriented health magazine from 2006 through 2010.  In 2010, Boston Hannah published *Understanding Over the Counter Medicines*. Advertisements were added to this magazine in 2010, this magazine was printed in 2010, and this magazine was published in February/March 2010.  And Boston Hannah admits that AAFP did not breach the 2005 Agreement with respect to any of the magazines Boston Hannah published. Accordingly, AAFP carries its initial burden of establishing the lack of evidence as to an essential element of Boston Hannah's claim. *See Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)) (explaining that a party that does not carry the ultimate burden of persuasion can carry its initial summary judgment burden by demonstrating that the other party lacks evidence on an essential element of that party's claim).

In an effort to survive summary judgment, Boston Hannah argues that the 2010 magazine is part of the 2009 editorial content and, therefore, Boston Hannah did not produce a 2010 magazine.  If successful, this argument would mean that Boston Hannah would at least have the right to publish one more magazine.  But the 2005 Agreement does not require that the editorial content be prepared the same calendar year that the magazine is published.  (*See, e.g.*, Doc. 137-1 at §§ 2.1, 2.3, 2.8, 2.13, 7.1.)  And the plain language of the 2005 Agreement does not support Boston Hannah's definition of "edition."  Rather, the agreement grants Boston Hannah the right to publish an annual consumer-oriented health magazine in 2010.  And that happened.  Boston Hannah failed to set forth specific facts from which a jury could find for Boston Hannah.  *See Thom*, 353 F.3d at 851 (explaining that if the movant carries its initial burden, the nonmovant that has the burden of persuasion at trial must

come forward with specific facts from which a rational trier of fact could find for the nonmovant).

Accordingly, AAFP is entitled to summary judgment on this claim.

> **4.      Even If The 2005 Agreement Was Amended, Boston Hannah Has Provided No Admissible Evidence Of Breach**

Even if the 2005 Agreement had been amended to allow Boston Hannah to sell multiple magazines, to place an electronic copy of each magazine on www.familydoctor.org, and to sell advertising on www.familydoctor.org, AAFP would still be entitled to summary judgment.  AAFP moved for summary judgment because Boston Hannah lacks evidence of a breach.  As repeatedly noted, the breach identified by Boston Hannah is that AAFP's agreements with TCCC and Pharmavite violate § 2.2, which grants AAFP the right to approve, "such approval not to be unreasonably withheld," all advertising content.  (Doc. 140-19 at § 2.2.)  But Boston Hannah has failed to come forward with any admissible evidence suggesting that it is unreasonable to not place beverage or dietary supplement advertisements (or advertisements from such companies) in AAFP's annual magazine.  Rather, Boston Hannah argues in a conclusory fashion that AAFP entered these agreements, that these agreements prohibit Boston Hannah from selling advertisements to beverage companies and dietary supplement companies including legitimate and healthy advertisers, and that this conduct is unreasonable.  But Boston Hannah does not provide evidence that such conduct is unreasonable.  Accordingly, AAFP would still be entitled to summary judgment on Boston Hannah's first claim.

> **B.    AAFP Is Entitled To Summary Judgment On Boston Hannah's Breach of Implied Duty of Good Faith And Fair Dealing Claim**

Boston Hannah's second claim is that AAFP breached the implied duty of good faith and fair dealing when AAFP entered into the Pharmavite and TCCC agreements because these agreements included commercially unreasonable advertising restrictions.  Kansas courts imply a duty of good faith and fair dealing in every contract.  *Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1178

(D. Kan. 1990) (citing *Bonanza, Inc. v. McLean*, 747 P.2d 792, 801 (Kan. 1987)).  This implied undertaking by each party means that "he will not intentionally and purposely do anything to prevent the other party from carrying out his part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Bonanza*, 747 P.2d at 801.  But this implied duty will not supply new contract terms.  *See Pizza Hut*, 737 F. Supp. at 1179; *Bonanza*, 747 P.2d at 801 ("However, essential terms of a contract on which the minds of the parties have not met cannot be supplied by the implication of good faith and fair dealing.").

Boston Hannah bases its claim on § 2.2 of the 2005 Agreement.  For the reasons discussed above, AAFP performed all of its obligations under the 2005 Agreement.  Boston Hannah published an annual magazine in 2006 through 2010.  And Boston Hannah concedes that AAFP did not breach any agreement with respect to the magazines that Boston Hannah published.  And there is no evidence that AAFP acted in a commercially unreasonable manner with respect to these publications.  Therefore, Boston Hannah was able to carry out its part of the agreement and received the fruits of the contract.

Boston Hannah's argument again requires the court to determine that Boston Hannah had the right to produce additional magazines, to sell advertisements on www.familydoctor.org, or to place an electronic copy of the annual magazine on www.familydoctor.org.  If Boston Hannah had these rights, then it may be possible that AAFP acted in a commercially unreasonable manner by entering into the Pharmavite and TCCC agreements and, thereby, violated the implied duty.  But Boston Hannah did not have these rights, and the implied duty does not create these rights.  Therefore, Boston Hannah has no evidence that AAFP acted in a commercially unreasonable manner that deprived Boston Hannah of its legitimate expectations under the 2005 Agreement.  *See Pizza Hut*, 737 F. Supp. at 1178–79.  AAFP is entitled to summary judgment on this claim.

### C.  AAFP Is Entitled To Summary Judgment On Boston Hannah's Tortious Interference Claims

Boston Hannah's final claims are for tortious interference with contract and tortious interference with business expectancy.  The basis of these claims is that AAFP tortiously interfered with Boston Hannah's reasonable business expectancies and third-party advertisement contracts when AAFP entered into the Pharmavite and TCCC agreements.  The parties agree that New York law governs these claims.

To establish either claim under New York law, Boston Hannah must establish that it was damaged.  *See Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996) (identifying elements of tortious interference with contract claim); *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000) (discussing elements of tortious interference with business expectancy).  AAFP moves for summary judgment on both claims because Boston Hannah has no evidence of damages.  Specifically, AAFP argues that Boston Hannah retained the money it received from the advertising contracts and that there are no facts suggesting loss of good will and reputation.  The court agrees.  Boston Hannah failed to produce any admissible evidence regarding the damages element of these claims.  Rather, for both claims, Boston Hannah simply offers the speculative and conclusory argument that it was damaged.  (*See, e.g.*, Doc. 155 at 95 ("Contrary to AAFP's argument that Boston Hannah did not suffer damages, Boston Hannah was damaged, as those advertisers will likely never conduct business with Boston Hannah again because they did not receive the benefit of what they had bargained for in their advertising contracts."))  This is not sufficient to survive summary judgment.  *See, e.g.*, *Am. Preferred Prescription, Inc. v. Health Mgmt.*, 252 A.D.2d 414, 419 (N.Y. App. Div. 1998) ("Since plaintiff's claim for damages is entirely speculative, the cause of action for tortious interference with prospective business relations should be dismissed.").  The court grants AAFP's motion for summary judgment on these claims.

### III.     AAFP Is Entitled To Summary Judgment On AAFP's Counterclaims

AAFP also seeks summary judgment in its favor on AAFP's counterclaim for breach of contract.  To prevail on this claim, AAFP must establish: (1) the existence of a contract between Boston Hannah and AAFP; (2) sufficient consideration; (3) AAFP's performance or willingness to perform the contract; (4) Boston Hannah's breach of the contract; and (5) damages to AAFP caused by the breach.  *JP Morgan Trust Co. v. Mid-Am. Pipeline Co.*, 413 F. Supp. 2d 1244, 1272 (D. Kan. 2006) (citing *Commercial Credit Corp.*, 510 P.2d at 1325).

Both parties admit that the 2005 Agreement was an executed contract between Boston Hannah and AAFP that contained mutual promises.  And, for the reasons stated above, AAFP performed under the terms of the 2005 Agreement.  AAFP alleges that Boston Hannah breached the 2005 Agreement by failing to pay: (1) the guaranteed base royalties for the 2009 and 2010 annual magazines, (2) required inflationary adjustments on royalties, and (3) various editorial costs that AAFP incurred in producing the annual magazines.

Section 7.1 of the 2005 Agreement requires Boston Hannah to pay AAFP a guaranteed base royalty amount of $150,000 each year.  (Doc. 140-19 at § 7.1(a)–(e).)  The 2005 Agreement further requires Boston Hannah to pay this guaranteed base royalty amount in two equal installments of $75,000.  (*Id.*)  The 2005 Agreement includes a payment schedule for these guaranteed base royalty payments.  (*Id.*)  For example, for the 2009 annual magazine, Boston Hannah was obligated to pay AAFP $75,000 on July 1, 2008, and another $75,000 on February 1, 2009.  (*Id.* at § 7.1(d).)   It is undisputed that Boston Hannah failed to pay the second installment for the 2009 magazine (due on February 1, 2009).  Boston Hannah also failed to pay both installments for the 2010 magazine (due on July 1, 2009 and February 1, 2010).

The 2005 Agreement also requires Boston Hannah to pay an inflationary adjustment for each guaranteed base royalty payment after the 2006 magazine.  (*Id.* at § 7.1.)  It is undisputed that Boston Hannah has not paid $13,500 in inflationary adjustments.

The 2005 Agreement also requires Boston Hannah to reimburse AAFP for various editorial costs that AAFP incurred for each magazine.  (*Id.* at §§ 3.6(a) and 7.3.)  AAFP sent Boston Hannah an invoice for $23,822.46 for costs AAFP incurred with respect to the 2010 magazine *Understanding Over the Counter Medicines*.  Boston Hannah did not pay this invoice.

As an explanation for not paying these amounts, Boston Hannah advances several arguments including: (1) AAFP never sent Boston Hannah an invoice for the unpaid guaranteed base royalty payments, (2) Boston Hannah did not owe the 2010 guaranteed base royalty payment because the fifth edition of the magazine was not published, (3) AAFP's breach justified Boston Hannah's nonperformance, and (4) AAFP's breach made it impracticable for Boston Hannah to perform.  The court does not find these arguments persuasive.

The plain language of the 2005 Agreement does not require AAFP to send Boston Hannah an invoice for the guaranteed base royalty payments.  AAFP did have this responsibility for other costs and payments but not for the guaranteed base royalty payments.  And Boston Hannah has not identified any written amendments to the 2005 Agreement that imposed this obligation on AAFP. (Doc. 140-19 at § 9.1.)  Boston Hannah's second argument is not persuasive because, as discussed above, Boston Hannah did produce a magazine in 2010.  Finally, AAFP did not breach the 2005 Agreement.  Therefore, Boston Hannah's third and fourth argument fail.

Boston Hannah's failure to make the required payments constitutes a breach of the 2005 Agreement.  And AAFP has suffered damages in the amount of $262,322.46.  Accordingly, AFFP is entitled to summary judgment on its breach of contract claim in this amount.

IV.     **Reasonable Attorneys' Fees**

AAFP also seeks its reasonable attorneys' fees.  Section 8.1 of the 2005 Agreement expressly states that "[i]f either party obtains a judgment against the other party by reason of a breach of this Agreement, a reasonable attorneys' fee, as fixed by the court, shall be included in the judgment." (Doc. 137-1 at § 8.1.)  Kansas law enforces these types of contract terms.  *See Farmers Cas. Co. v. Green*, 390 F.2d 188, 192 (10th Cir. 1968) (holding that, under Kansas law and traditionally, attorneys' fees can be awarded only if provided by contract or authorized by statute).  AAFP, however, has not submitted evidence to establish its reasonable attorneys' fees.  Therefore, AAFP shall submit sufficient evidence to establish its reasonable attorneys' fees by February 17, 2012, Boston Hannah shall respond to that evidence by March 12, 2012, and AAFP may file a reply by March 23, 2012.

**IT IS THEREFORE ORDERED THAT** AAFP's motion for summary judgment (Doc. 138) is granted.

**IT IS FURTHER ORDERED** that AAFP shall submit sufficient evidence to establish its reasonable attorneys' fees by February 17, 2012, Boston Hannah shall respond to that evidence by March 12, 2012, and AAFP may file a reply by March 23, 2012.

**IT IS FURTHER ORDERED** that AAFP's motion to strike Boston Hannah's second and third expert reports (Doc. 119), AAFP's supplemental motion to strike (Doc. 132), and AAFP's motion to exclude the report and testimony of Douglas Miller (Doc. 136) are denied as moot.

Dated at this 18th day of January 2012, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
United States District Judge